UNITED STATES DISTRICT COURT
NORTHEN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SYNARTIS CAPITAL MANAGEMENT, LLC,

    Plaintiff,

v.                                                      Case No.

CP HOLDINGS CONSOLIDATED IV, LLC;
CP PROMENADE 2 RESIDENTIAL, LLC;
PATRICIA A. SHIVELY, individually;
PATRICIA A. SHIVELY, as Trustee of the
Irrevocable Trust of Patricia A. Shively
u/a/d October 26, 2010; and SVEIN H.
DYRKOLBOTN, individually;

    Defendants.
_____/

# EXHIBIT A

Promissory Note

# PROMISSORY NOTE
*(Interest-Only Payments / Balloon Payment)*

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND ALL UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

$2,500,000.00                                                                                         Date: July 12, 2022

**Address/ID of Property Securing Loan:** Tax Parcel ID 06828-005-000 (currently described as the O-2 pad); Tax Parcel ID 06828-006-000 (currently identified as the O-4 pad); a portion of Tax Parcel ID 06820-002-000 (currently described as residential liner units) and Tax Parcel ID 06820-002-018 (currently described as PNR lot)

FOR VALUE RECEIVED, the undersigned, **CP HOLDINGS CONSOLIDATED IV, LLC,** a Florida limited liability company, and joined by **CP PROMENADE 2 RESIDENTIAL, LLC**, a Florida limited liability company (collectively, the "Borrower"), hereby promises to pay to the order of **SYNARTIS CAPITAL MANAGEMENT, LLC**, a Georgia limited liability company, the principal sum of TWO MILLION FIVE HUNDRED THOUSAND and 00/100 Dollars ($2,500,000.00), or so much that shall be advanced to Borrower pursuant to the terms of this Promissory Note (this "Note"), which as now exists or may hereafter be advanced or reduced, is referred to as the "Loan", together with interest on the unpaid principal balance of this Note, as follows:

**1.**     **Interest**. Interest on the unpaid principal balance of the Loan will accrue from the date the proceeds have been distributed to or on behalf of the Borrower (the "Date of Advance") at an annual rate equal to seventeen percent (17%). Interest shall be computed on the actual number of days elapsed over a 360-day year. Interest computed based on a 360-day year is greater than interest computed based on a 365-day year.

**2.**     **Payment of Principal and Interest.**

**2.1**         **Payments.** Borrower shall pay to the Lender accrued interest only on the first day of each month beginning on August 1, 2022. Such payments shall continue until February 12, 2024 (the "Maturity Date"), when the entire indebtedness advanced by Lender to Borrower under this Note and all accrued and unpaid interest and fees shall be due and payable to Lender. Payments due under the Note shall be made in U.S. currency via wire or bank transfer pursuant to Section 2.5 below.

**2.2**         **Balloon Payment.** The payment schedule contained in Section 2.1 of this Note requires that Borrower make a balloon payment to Lender on the Maturity Date in an amount equal to the entire indebtedness advanced by Lender to Borrower, together with any and all remaining and outstanding interest and fees. This balloon payment is more than double the amount of the payments of accrued interest due on the first day of each month pursuant to Section 2.1.

2.3     **Partial Payments**. Payments are deemed received by Lender when received in accordance with Section 2.5 or, in the event alternative payment instructions are authorized in accordance with Section 2.5, at the location designated in such instruction. Lender may return any payment or partial payment if the payment or partial payment is insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current without waiving any of its rights hereunder and without prejudicing its rights to refuse such payment or partial payments in the future. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under this Note and the Mortgage or performing the covenants and agreements set forth in the Note and the Mortgage.

2.4     **Order of Application of Payments.** Each payment under this Note shall be credited in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender, together with interest thereon, under any provision of this Note, the Mortgage or any other Loan Document, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

3.      **Late Charge.** Borrower acknowledges that Borrower's failure to timely pay any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations. Borrower further acknowledges that the extent of such loss and additional expense is extremely difficult and impractical to ascertain. As a result of the foregoing, any payment due under this Note not received by Lender five (5) business days after the same is due shall constitute a Default, as defined in this Note and the Mortgage, and a late charge equal to ten percent (10%) of the required payment will be charged to the Borrower (the "Late Charge") to cover expenses incurred in handling such delinquent payment. The assessment of a Late Charge upon Borrower shall not prejudice or affect any other rights or remedies of Lender.

4.      **Default.** A "Default" shall be deemed to occur upon (a) Borrower's failure to pay any installment or other sum due under this Note within five (5) business days of when such sum is due and payable (whether by extension, acceleration, or otherwise), (b) the occurrence of an Event of Default (as defined in the Mortgage), or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, and the continuance of such breach for thirty (30) calendar days after Lender gives written notice of such breach to Borrower. Upon the occurrence of a Default, Lender may, at its option, declare the Loan (including, without limitation, all accrued interest) due and payable immediately, regardless of the Maturity Date. Borrower expressly waives notice of the exercise of this option.

5.      **Prepayment.** Borrower shall have no right to prepay within one (1) year from the date of this Note. Thereafter, Lender shall have no duty to accept full or partial prepayment of the Loan, unless Borrower delivers to Lender at least fifteen (15) days' prior written notice of Borrower's intention to prepay the Note ("Prepayment Notice"). Said Prepayment Notice shall include the amount Borrower intends to prepay. Borrower shall pay Lender the principal due under the Note together with any unpaid interest and fees as of the Maturity Date. Should the Borrower not repay the full amount due under the Note together with any unpaid interest and fees within 15 days after the Prepayment Notice is received by the Lender or Lender's attorney not as a result of Lender's actions or inactions, the Borrower shall pay a fee of 2% of the principal loan amount shall be added as principal to the loan ("Prepayment Late Fee"). In the event that Borrower does not repay the full amount due under the Note together with any unpaid interest and fees within 30 days after Prepayment Notice is received for reasons not directly related to Lender's actions or inactions, Borrower shall be in default under this Note.

6.      **Interest on Default.** If Borrower is in Default under this Note, as that event is contemplated under Section 4 of this Note, or defaults under any other clause of any document executed in connection with or pursuant to this Note or the Mortgage, then the entire unpaid principal balance shall automatically bear an annual interest rate equal to the lesser of (a) the rate specified in Section 1 of this Note plus three percent

(3%) or (b) the maximum interest rate allowed by applicable usury law (the "Default Rate"). If the Maturity Date is accelerated pursuant to Section 4, the unpaid principal shall accrue interest at the Default Rate only until the Default is cured. Borrower acknowledges and agrees that (i) the Default Rate is a material inducement to the Lender to make the Loan, and the Lender would not have made the Loan had the Borrower not agreed to pay the Default Rate in connection with a Default; (ii) the Default Rate represents compensation to the Lender for increased risk that the Loan will not be repaid by the Borrower; and (IV) it would be extremely difficult or impractical to determine the actual damages resulting from Borrower's failure to pay the principal, accrued interest and other sums due on the Maturity Date (including any accelerated Maturity Date), and therefore Borrower shall pay interest at the Default Rate not as a penalty, but for purposes of defraying the expenses incident to handling and collecting the past due principal, accrued interest and other sums due under this Note. Borrower further acknowledges that interest at the Default Rate represents the reasonable estimate of the loss that may be sustained and additional cost that must be expended by Lender due to the failure of Borrower to pay the principal, accrued interest and other sums due on the Maturity Date. Interest at the Default Rate shall be payable by Borrower without prejudice to the rights of Lender to collect any other amounts to be paid under this Note (including, without limitation, late charges pursuant to Section 3 above) or the Mortgage.

7. **Due-on-Sale.** In the event of any sale, conveyance, assignment or other transfer of (a) all or any part of the Property (as hereinafter defined), (b) any interest in the Property (other than leases entered into in the ordinary course of business on Borrower's standard form of lease in accordance with the procedures set forth in Section 6 of the Mortgage), or (c) any of the ownership interests of Borrower, whether any such sale, conveyance, assignment or other transfer occurs directly or indirectly, voluntarily or involuntarily or by operation of law, without the prior written consent of Lender (which may be withheld in Lender's sole and absolute discretion), then Lender may declare a Default hereunder and may elect, in its sole and absolute discretion, to accelerate the Maturity Date and declare the entire unpaid principal, accrued interest and other sums due hereunder to be immediately due and payable.

8. **Costs, Expenses and Fees.** Borrower agrees to pay the following costs, expenses, and fees (including reasonable in-house and outside attorneys' fees) paid or incurred by Lender: (a) arising out of or in connection with the collection or enforcement of this Note, whether or not suit is filed; (b) arising out of or in connection with any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note; (c) that Lender deems necessary in its discretion to protect its Mortgage and lien on the Property (defined below) and its rights in the other collateral or security arising under the Loan Documents, but only after an Event of Default is declared; and (d) arising from any suit, action or other proceeding to enforce payment of any and all amounts owing by Borrower and any guarantors of the Note after an award of such fees to the Lender by a court of competent jurisdiction.

9. **Waiver.** Borrower, endorsers, guarantors and all other persons liable or to become liable on this Note waive diligence, presentment, protest and demand, and also notice of protest, demand, nonpayment, dishonor and maturity and consents to any extension of the time or terms of payment hereof, any and all renewals or extensions of the terms hereof, any release of all or any part of the security given for this Note, any acceptance of additional security of any kind and any release of any party liable under this Note. Any such renewals or extensions may be made without notice to Borrower.

10. **Notice.** Any notice required or permitted to be provided in this Note shall be given in writing and shall be sent (a) by first-class certified United States mail, postage prepaid, return receipt requested; (b) by a nationally recognized overnight delivery service, marked for next business day delivery; or (c) email transmission. All notices shall be addressed to the party to whom such notice is to be given at the following addresses:

        Lender:        Synartis Capital Management, LLC
                        13010 Morris Road, Suite 600
                        Alpharetta, Georgia 30004

  Borrower:  CP Holdings Consolidated IV, LLC
         5001 Celebration Pointe Drive, Suite 180
         Gainesville, Florida 32608

         CP Promenade 2 Residential, LLC
         5001 Celebration Pointe Drive, Suite 180
         Gainesville, Florida 32608

or to such other address as a party may designate by written notice to the other. All notices shall be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or (d) if sent by overnight delivery service, on the next day on which such service makes next business day deliveries after the day of sending.

**11.**  **Secured by Mortgage.** This Note is secured by, among other things, (a) that certain Mortgage, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Mortgage") of even date herewith made by Borrower, as mortgagor, for the benefit of Lender, as mortgagee, encumbering certain real property located in Celebration Pointe, more particularly, Tax Parcel ID 06828-005-000 (currently described as the O-2 pad); Tax Parcel ID 06828-006-000 (currently identified as the O-4 pad); a portion of Tax Parcel ID 06820-002-000 (currently described as residential liner units) and Tax Parcel ID 06820-002-018 (currently described as PNR lot), as more particularly set forth in the Mortgage (the "Property") and (b) that certain Security Agreement by and between Borrower, as debtor, and Lender, as secured party, dated as of even date herewith.

**12.**  **Substitution of Collateral**. Notwithstanding anything to the contrary herein, the Borrower may, in the Lender's sole discretion, add additional collateral to the Collateral and/or may substitute Collateral as the Borrower deems fit, provided that the fair market value of the substituted Collateral may not be less than the collateral value initially provided as of the date of the Note and Mortgage. Any portion of the Collateral replaced by the substituted Collateral shall be released or returned to the Borrower within five (5) business days of Borrower's written notice of substitution, and Lender shall timely execute and deliver to the Borrower, and file and/or record, as necessary, all such documents as the Borrower shall reasonably request to evidence such substitution of Collateral.

**13.**  **Forbearance Not a Waiver.** If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights or of any breach, Default or failure of condition under this Note. No waiver by Lender of any of its rights or of any such breach, Default, or failure of condition shall be effective unless the waiver is expressly stated in a writing signed by Lender, and such waiver shall be effective only in the specific instance and for the specific purpose for which the waiver was given. No notice to or demand on Borrower shall entitle Borrower to any further or future notice or demand.

**14.**  **Assignment.** This Note inures to and binds the heirs, legal representatives, successors, and assigns of Borrower and Lender; provided, however, that Borrower may not assign this Note, any proceeds of it or any other Loan Document, or assign or delegate any of its rights or obligations, without Lender's prior written consent in each instance. Lender in its sole discretion may transfer this Note and the other Loan Documents, and may sell or assign participations or other interests in all or any part of this Note and the other Loan Documents, all without notice to or the consent of Borrower.

**15.**  **Governing Law.** This Note shall be governed by and construed and enforced in accordance with the laws of the State of Georgia for all purposes.

**16.**  **Usury.** All agreements between Borrower and Lender are expressly limited so that in no event or

contingency, whether because of the advancement of the proceeds of this Note, acceleration of the Maturity Date of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance, or retention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances, fulfillment of any provision of this Note or the Mortgage securing this Note or any other agreement pertaining to this Note, after timely performance of such provision is due, shall involve exceeding the limit of validity prescribed by law that a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower. This provision shall apply to and control every other provision of all agreements between Borrower and Lender.

17.     **Time Is of the Essence**. Time is of the essence with respect to all obligations of Borrower under this Note.

18.     **Joint and Several Liability**. If more than one Person is named as Borrower, each obligation of Borrower under this Note shall be the joint and several obligations of each such Person.

19.     **Cross-Default**. Any default, Default or Event of Default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any Affiliate of Borrower to Lender or any Affiliate of Lender shall, at Lender's option, constitute a Default under this Note. The following definitions shall apply to this Note:

"**Affiliate**" means, with respect to any Person, any other Person that is directly or indirectly Controlling, Controlled by or under common Control with, such Person.

"**Control**" and derivative terms means the possession, directly or indirectly, and acting either alone or together with others, of the power or authority to direct or cause the direction of the management, material policies, material business decisions or the affairs of a Person, whether through the ownership of equity securities or interests, by contract or other means.

"**Person**" means any natural person, business, corporation, company, association, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, business enterprise, trust, government authority or other legal entity.

**INITIALS OF AUTHORIZED SIGNATORY OF BORROWER:** _____

20.     **Cross-Collateralization**. In addition to this Note, all liens, security interests, assignments, suretyship obligations, stock pledges, rights and remedies granted to the Lender in the Loan Documents (as defined in the Mortgage) shall secure all obligations, debts and liabilities, plus interest thereon, of the Borrower, guarantor(s) of the Loan and any Affiliate of the Borrower to the Lender, as well as Related Loans (as defined in the Mortgage) and claims by the Lender against the Borrower, guarantor(s) of the Loan or any Affiliate of the Borrower whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, absolute or contingent, whether the Borrower or any Affiliate of the Borrower may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

20.1    Lender at its option may treat the Loan and each of the Related Loans as separate and independent obligations, or may treat some or all of such loans, and all or any part of the Indebtedness (as defined in the Mortgage), as a single, integrated indebtedness of Borrower or any Affiliate of Borrower.

20.2    It is the intention of Lender and Borrower that Borrower's obligations to pay the

Note – Celebration Pointe                              5

Indebtedness shall be independent, primary, and absolute, and shall be performed without demand by Lender and shall be unconditional irrespective of the genuineness, validity, regularity or enforceability of any of the Related Loans' loan documents, and without regard to any circumstance, other than payment in full of the Indebtedness, which might otherwise constitute a legal or equitable discharge of a borrower, a mortgagor, trustor, a surety, or a guarantor. Borrower waives, to the fullest extent permitted by law, all rights to require Lender to proceed against any Affiliate of the Borrower or against any guarantor of any of the Indebtedness or to pursue any other right or remedy Lender may now or hereafter have against any Affiliate of the Borrower, any guarantor of any of the Indebtedness or any collateral for any of the Indebtedness.

**20.3** No judgment obtained by Lender in any proceeding enforcing any of the Loan Documents (as defined in the Mortgage) or Related Loans' loan documents shall merge any of the Indebtedness into that judgment, and all Indebtedness that remains unpaid shall remain a continuing obligation of Borrower and any Affiliate of Borrower. Notwithstanding any foreclosure of the Loan or any of the Related Loans, Borrower shall remain bound under this agreement.

**INITIALS OF AUTHORIZED SIGNATORY OF BORROWER:** _____

**21.     WAIVER OF JURY TRIAL.** LENDER AND BORROWER EACH HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY, AND UNCONDITIONALLY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED ON, ARISING FROM, OR RELATED TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED BY THIS NOTE, IN ANY ACTION, PROCEEDING, OR OTHER LITIGATION OF ANY TYPE BROUGHT BY EITHER PARTY AGAINST THE OTHER, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM, OR OTHER PROCEEDING THAT SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS NOTE. THIS WAIVER SHALL APPLY TO ANY FUTURE AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS NOTE.

**INITIALS OF AUTHORIZED SIGNATORY OF BORROWER:** _____

**22.     Representation on Use of Proceeds.** In order to induce the Lender to enter into this Note and the Loan Documents and to advance the Loan to Borrower, Borrower represents and warrants to Lender that the proceeds of this Note will be used solely for business, commercial investment, or similar purposes, and that no portion of it will be used for personal, family, or household purposes.

**23.     No Modifications or Amendments; No Waiver.** Except as specified herein, this Note may not be amended, modified or changed, nor shall any waiver of the provisions hereof be effective, except only by an instrument in writing signed by the party against whom enforcement of any waiver, amendment, change, modification or discharge is sought. Additionally, a waiver of any provision in one event shall not be construed as a waiver of any other provision at any time, as a continuing waiver, or as a waiver of such provision on a subsequent event.

**24.     Severability.** Any provision of this Note which shall be held by a court of competent jurisdiction to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision or term hereof, and such other provisions or terms shall remain in full force and effect.

**25.     Successors and Assigns.** Whenever used herein, the terms "Lender" and "Borrower" shall be deemed to include their respective heirs, personal representatives, successors and assigns.

**26.     Cooperation.** Borrower acknowledges that Lender and its successors and assigns may (a) sell, transfer, or assign this Note, the Mortgage, and other Loan Documents to one or more investors as a whole loan, in a rated or unrated public offering or private placement; (b) participate the Loan evidenced

by this Note and secured by the Mortgage to one or more investors in a rated or unrated public offering or private placement; (c) deposit this Note, the Mortgage, and other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets in a rated or unrated public offering or private placement; or (d) otherwise sell the Loan or interest therein to investors in a rated or unrated public offering or private placement (Each of the transactions referred to in clauses (a)-(d) shall hereinafter be referred to as a "Secondary Market Transaction").  Borrower shall, at Lender's expense, cooperate in good faith with Lender in effecting any such Secondary Market Transaction and shall cooperate in good faith to implement all requirements reasonably imposed by the participants involved in any Secondary Market Transaction (including, without limitation, a rating agency and/or an institutional purchaser, participant, or investor) including, without limitation, all structural or other changes to the Loan, modifications to any documents evidencing or securing the Loan, delivery of opinions of counsel acceptable to the rating agency or such other purchasers, participants or investors, and addressing such matters as the rating agency or such other purchasers, participants, or investors may require; provided, however, that the Borrower shall not be required to modify any documents evidencing or securing the Loan that would modify (i) the interest rate payable under the Note, (ii) the stated maturity of the Note, (IV) the amortization of principal of the Note, or (iv) any other material terms or covenants of the Loan. Borrower shall provide such information and documents relating to Borrower, the Property, the Leases (as defined in the Mortgage), and any lessees as Lender or the rating agency or such other purchasers, participants, or investors may reasonably request in connection with a Secondary Market Transaction. Lender shall have the right to provide to the rating agency or prospective purchasers, participants, or investors any information in its possession including, without limitation, financial statements relating to Borrower, the Property, and any lessee. Borrower acknowledges that certain information regarding the Loan and the parties thereto and the Property may be included in a private placement memorandum, prospectus, or other disclosure documents.

**27.    Full Recourse Liability.** Borrower shall have full recourse liability under this Note, the Mortgage and all other Loan Documents for the repayment of the Indebtedness (as defined in the Mortgage) and for the performance of any and all other obligations of Borrower under this Note, the Mortgage and all other Loan Documents executed in connection with the Loan.

**28.    Final Agreement.** This Note and the other Loan Documents, taken together, constitute the entire agreement of the parties with respect to the subject matter hereof and thereof and are intended to supersede all prior negotiations, understandings and agreements with respect to such subject matter.

**29.    Representation by Attorney**. Borrower understands and acknowledges that Lender's counsel is representing the Lender's interests only and is not representing the Borrower's interests in connection with the Loan, this Note or any of the Loan Documents.  Borrower has been, and is hereby, advised by Lender of its right to obtain independent legal counsel and has either obtained such independent legal counsel in connection with this Note and the Loan Documents or has knowingly and voluntarily waived its right to obtain such independent legal counsel.

**30.    Amount(s) Advanced**. Notwithstanding anything to the contrary contained herein, including the amount set forth on the face of this Note, Borrower and Lender acknowledge and agree that the Lender has advanced $2,000,000.00 upon execution of this Note and in the event that the amount advanced is less than the face amount of this Note, Lender, in Lender's sole discretion, may lend additional funds up to the face amount of the Note.

IN WITNESS WHEREOF, Borrower has executed and delivered this Promissory Note as of the date first written above.

BORROWER:

**CP HOLDINGS CONSOLIDATED IV, LLC**
a Florida limited liability company

By: SHD-CELEBRATION POINTE, LLC
     a Florida limited liability company
Title: Manager

By: _____
Name: Svein Dyrkolbotn
Title: Manager

(Seal)


BORROWER:

**CP PROMENADE 2 RESIDENTIAL, LLC,**
a Florida limited liability company

By: SHD-CELEBRATION POINTE, LLC
     a Florida limited liability company
Title: Manager

By: _____
Name: Svein Dyrkolbotn
Title: Manager

(Seal)

Note – Celebration Pointe          8